OGLOZA FORTNEY LLP
   Darius Ogloza (SBN 176983)
   *dogloza@oglozafortney.com*
   David C. Fortney (SBN 226767)
   *dfortney@oglozafortney.com*
   Neema Ghiasi (SBN 303405)
   *nghiasi@oglozafortney.com*
535 Pacific Avenue, Suite 201
San Francisco, California 94133
Telephone:  (415) 912-1850
Facsimile:  (415) 887-5349

Attorneys for Plaintiffs
CLAY HOGAN and BARBARA HOGAN

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAY HOGAN, an individual; BARBARA HOGAN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OPPENHEIMER & CO. INC., a New York corporation; ZAK SHAPIRO, an individual,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR:**<br><br>1) **VIOLATION OF 15 U.S.C. SECTION 78j and 15 U.S.C. SECTION 78o**<br>2) **UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUS. & PROF. CODE § 17200;**<br>3) **FRAUD – INTENTIONAL MISREPRESENTATION;**<br>4) **BREACH OF FIDUCIARY DUTY; and**<br>5) **VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25401**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Clay Hogan and Barbara Hogan ("the Hogans"), for their complaint against defendants Oppenheimer Inc. Co. ("Oppenheimer") and Zak Shapiro ("Shapiro") allege as follows:

## NATURE OF THE ACTION

1. This is a case involving (1) the fraudulent adjustment of risk tolerances and trade preferences made by an investment firm and one of its financial advisors in order to justify high-risk, short-term trading activity on plaintiffs' cash and margin brokerage account; (2) the "churning" of plaintiffs' accounts through numerous unauthorized trades (fraudulently designated as "solicited") made by an investment firm and one of its financial advisors, that generated no less than $45,000 in fees; and (3) as a direct result of the foregoing, substantial financial losses suffered by plaintiffs.

## THE PARTIES

2. Plaintiffs Clay and Barbara Hogan are husband and wife who reside in San Francisco, California.

3. Defendant Oppenheimer & Co. Inc. is a New York corporation headquartered in New York, New York.

4. Defendant Zak Shapiro is an individual who on information and belief is a resident of Los Angeles, California.

5. The Hogans are informed and believe, and thereon allege, that each of the defendants is now and has been at all times herein mentioned the agent, servant, employee, partner, associate, joint venturer, co-participant, and/or principal of each of the remaining defendants, and that each defendant has been, at all times mentioned herein, acting within the scope of such relationship and with the full knowledge, consent, authority, ratification, and/or permission of each of the remaining defendants.

## JURISDICTION AND VENUE

6. This action arises under 15 U.S.C. Section 78j and 15 U.S.C. Section 78o, and under the common and statutory laws of the State of California.

//

7. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. Section 1331 and Section 27 of the Securities Exchange Act of 1934. This Court has supplemental jurisdiction over the Hogans' state law claims under 28 U.S.C. Section 1367(a).

8. This Court has personal jurisdiction over the defendants because defendants conduct business in the State of California and because the willful actions described herein principally took place in the State of California.

9. Venue is proper in this judicial district pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. Sections 1391(b) and (c). The false and misleading statements were made in or issued from this district.

10. In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails and interstate wire and telephone communications.

**FACTUAL ALLEGATIONS**

11. Zak Shapiro ("Shapiro") served as the Hogans' financial advisor for approximately 18 years. The Hogans trusted Shapiro, who had managed the Hogans' brokerage account without incident for more than 15 years, and over that time generally deferred to Shapiro's investment recommendations. Prior to the excessive trading detailed below, the Hogans had generally engaged in or approved a handful of transactions per year in their brokerage account.

12. When Shapiro moved brokerage houses, to Oppenheimer & Co., Inc. ("Oppenheimer"), he asked the Hogans if they would consider moving their account to Oppenheimer for Shapiro to continue to manage. In response to Shapiro's request, Clay and Barbara Hogan ("the Hogans") opened an individual cash and margin account with Oppenheimer & Co. Inc. ("Oppenheimer"), account number G58-1551559 ("the Agreement").

13. The Hogans are both in their fifties; Clay Hogan works as a plumber and Barbara Hogan works as a preschool teacher.

//

//

COMPLAINT

14. When the Hogans opened their account, they provided Oppenheimer and one of Oppenheimer's financial advisors, Zak Shapiro ("Shapiro"), with intake forms outlining the Hogans' personal information, investment objectives, and risk tolerance.

15. The Hogans' intake forms indicated their investment objectives and preferences were for moderate capital appreciation and income, with a corresponding moderate risk tolerance.

16. Neither Shapiro nor Oppenheimer was granted discretionary control over the account. However, as described above, the Hogans had in the past accepted Shapiro's investment recommendations.

17. On information and belief, in the course of working with the Hogans, Shapiro modified the Hogans' risk preference documents numerous times, including altering the Hogans' investment objectives, current income and current net worth, to justify riskier trades. The modified documents were approved by Shapiro's supervisor at Oppenheimer, Carter Hershey.

18. The Hogans did not authorize Shapiro, or Oppenheimer, to change their investment risk preferences, or consent to the same.

19. Subsequent to the Hogans' transfer of their brokerage account to Oppenheimer, Shapiro and/or Oppenheimer began trading stocks in the Hogans' account at a much higher volume than the Hogans had ever been aware of or authorized.

20. On information and belief, in total, Oppenheimer and Shapiro made over 500 trades on the Hogans' account, costing the Hogans more than $45,000 in fees.

21. The majority of the trades made by Oppenheimer and Shapiro during the relevant period were marked as "solicited" in Oppenheimer's system, indicating that the stock trades had been discussed with and authorized by the Hogans. However, the Hogans did not authorize Shapiro, or Oppenheimer, verbally or otherwise, to make the vast majority of the "solicited" trades on their account.

22. As a result of Oppenheimer and Shapiro's trading activity, the Hogans incurred substantial financial losses in addition to the fees paid to Shapiro and/or Oppenheimer.

23. On information and belief, Shapiro has had no fewer than 17 disclosures filed with the Financial Industry Regulatory Authority ("FINRA"), including numerous customer complaints alleging unsuitable, unauthorized and/or excessive trading.

24. On information and belief, Oppenheimer knew or should have known about Shapiro's excessive customer complaints. On information and belief, Oppenheimer knew or should have known that the radically increased trading activity in the Hogans' account, based on a dramatically different risk profile than existed when the Hogans opened their account, was suspicious. On information and belief, Oppenheimer failed to adequately investigate the excessive trading activity in the Hogans' account.

## FIRST CLAIM FOR RELIEF

**(Violation of §10b and §15c of the Securities Exchange Act of 1934,**

**15 U.S.C. Section 78j and 15 U.S.C. Section 78o)**

25. The Hogans reassert and reallege paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. Shapiro, as the Hogans' financial adviser, and Oppenheimer violated § 10b and Rule 10b-5, and §15c and Rule 15c1-2 under the Securities Exchange Act in that they:

   a. Employed devices, schemes, and artifices to defraud the Hogans;
   b. Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or
   c. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon the Hogans.

27. The devices, schemes and artifices involved Oppenheimer and Shapiro churning the Hogans' account through hundreds of unauthorized trades, which were excessive in light of the size and character of the account, as well as creating false documents that were used to justify those risky and voluminous trades.

//

//

28. The Hogans relied on Oppenheimer and Shapiro to faithfully invest their monies in the manner stated in their initial account opening intake form. At all relevant times, Shapiro exercised control over the Hogans' investment account.

29. On information and belief, Shapiro and Oppenheimer intended that the Hogans rely on their misrepresentations and/or omissions.

30. As a result of the Hogans' reliance on Oppenheimer and Shapiro, the Hogans' lost a substantial amount of their initial investment, in addition to the fees and costs Oppenheimer and Shapiro collected on the Hogans' account.

## SECOND CLAIM FOR RELIEF

### (Fraudulent Business Acts and Practices Under California Business & Professions Code Section 17200)

31. The Hogans reassert and reallege paragraphs 1 through 30, inclusive, as though fully set forth herein.

32. Oppenheimer and Shapiro have engaged in fraudulent acts or practices in the conduct of a business, which acts or practices constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 et seq.

33. Oppenheimer and Shapiro induced the Hogans—as consumers—to enter into the Agreement, and invest their monies with Oppenheimer, on the false promise that Oppenheimer andShapiro would invest the Hogans' money faithfully, and according to the moderate trading preferences the Hogans indicated in their initial intake forms.

34. Oppenheimer and Shapiro fraudulently modified the Hogans' account preferences to justify risky and voluminous investments far outside the scope of what the Hogans anticipated, and were promised.

35. The false promises Oppenheimer and Shapiro made to induce the Hogans to enter the Agreement constitute unfair business practices under Cal. Bus. & Prof. Code § 17200 et seq.

//
//
//

36. As a result of Oppenheimer and Shapiro's conduct as set forth herein, under Cal. Bus. & Prof. Code § 17203, the Hogans are entitled to an order and judgment which may be necessary to disgorge Oppenheimer and Shapiro's ill-gotten gains and restore any money or property lost by the Hogans to Oppenheimer and Shapiro.

37. The Hogans also seek an injunction prohibiting Oppenheimer from engaging in similar fraudulent acts and practices in the future.

## THIRD CLAIM FOR RELIEF

**(Fraud – Intentional Misrepresentation)**

38. The Hogans reassert and reallege paragraphs 1 through 37, inclusive, as though fully set forth herein.

39. Oppenheimer and its employee, Shapiro, made false representations that they would faithfully invest the Hogans monies as indicated in their initial intake forms, which stated a preference for moderate investment objectives and moderate risk tolerance.

40. On information and belief, Shapiro knew that his, and Oppenheimer's representations to invest the Hogans monies with a moderate investment objective and a moderate risk tolerance was false.

41. On information and belief, Shapiro and Oppenheimer knew that the representations were false when they were made, or that the representations were made recklessly and without regard for the truth.

42. In misrepresenting the Hogans' account preferences, Oppenheimer and Shapiro acted with malice, oppression and reckless disregard for the Hogans' rights.

43. On information and belief, Shapiro and Oppenheimer intended that the Hogans rely on their misrepresentations.

44. The Hogans did in fact reasonably rely on Shapiro and Oppenheimer's misrepresentations.

45. As a direct result of the misrepresentations made by Shapiro and Oppenheimer, the Hogans were harmed.

//

46. The Hogans' reliance on Shapiro's and Oppenheimer's misrepresentations was a substantial factor in causing the harm they incurred.

## FOURTH CLAIM FOR RELIEF

**(Breach of Fiduciary Duty)**

47. The Hogans reassert and reallege paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. Oppenheimer and its employee, Shapiro, as investment advisers, owed fiduciary duties of good faith, loyalty and due care to their clients, the Hogans.

49. Oppenheimer and Shapiro breached these duties by modifying the Hogans' risk preference documents and income/net worth documents—without their authorization or consent—to justify riskier trades, at a much higher volume than the Hogans authorized.

50. Oppenheimer and Shapiro also breached these duties by making voluminous trades on the Hogans' account, without obtaining the necessary permission from the Hogans.

51. In modifying the Hogans' account preferences and engaging in risky and voluminous short-term trading, Oppenheimer and Shapiro acted with malice, oppression and reckless disregard for the Hogans' rights.

52. As a result of these actions by Oppenheimer and Shapiro, the Hogans have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**(Violation of California Corporations Code Section 25401)**

53. The Hogans reassert and reallege paragraphs 1 through 52, inclusive, as though fully set forth herein.

54. Oppenheimer and Shapiro, as the Hogans' financial advisers, engaged in a deliberate scheme to defraud the Hogans.

55. The scheme involved Oppenheimer and Shapiro churning the Hogans' account through hundreds of unauthorized trades, which were excessive in light of the size and character of the account, as well as creating false documents that were used to justify those risky and voluminous trades.

56. The Hogans relied on Oppenheimer and Shapiro to faithfully invest their monies in the manner specified in their initial intake form.

57. On information and belief, Shapiro and Oppenheimer intended that the Hogans rely on their misrepresentations and omissions.

58. As a result of the Hogans' reliance on Oppenheimer and Shapiro, the Hogans lost a substantial amount of their initial investment, in addition to the fees and costs Oppenheimer and Shapiro collected on the Hogans' account.

## **PRAYER FOR RELIEF**

WHEREFORE, the Hogans pray for judgment against defendants, and each of them, as follows:

1. For an award of compensatory damages from Oppenheimer and Shapiro to the Hogans in an amount to be proven at trial;

2. For restitution as permitted under California law;

3. For punitive damages;

4. For injunctive relief prohibiting Oppenheimer from lax supervision of its employed brokers and agents;

5. For an award of consequential damages from Oppenheimer and Shapiro to the Hogans in an amount to be proven at trial;

6. For an award of the Hogans' fees pursuant to California Code of Civil Procedure Section 1021.5, and costs; and

7. For such further relief as the Court may deem proper.


Dated: October 20, 2017                OGLOZA FORTNEY LLP


                                       By: ___/s/Darius Ogloza_____
                                              Darius Ogloza

                                       Attorneys for Plaintiffs
                                       CLAY HOGAN and BARBARA HOGAN

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all causes of action alleged herein that are so triable.

OGLOZA FORTNEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT